UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Midwest Transmissions, Inc.,

      Plaintiff,

v.                                                                                 Civ. No. 03-3331 (JNE/AJB)
                                                                                     ORDER

AAA Wholesale Transmissions and Parts, Inc.,
and Paul Zborovsky,

      Defendants.

---

Gerald S. Weinrich, Esq., appeared for Plaintiff Midwest Transmissions, Inc.

John R. Dorgan, Esq., appeared for Defendant Paul Zborovsky.

---

This action arises from Midwest Transmissions, Inc.'s (Midwest) purchase of automobile transmissions from AAA Wholesale Transmissions and Parts, Inc. (AAA Wholesale), in 2001 and 2002. Paul Zborovsky represented AAA Wholesale in the transaction. The case is before the Court on Zborovsky's Motion for Summary Judgment. For the reasons set forth below, the Court denies Zborovsky's motion.

## I.    BACKGROUND

Midwest is a Minnesota corporation engaged in the re-manufacture and sale of automobile parts. Zborovsky worked as a sales representative for AAA Wholesale, a Florida corporation, which is a wholesale dealer of automobile parts.

In August 2001, Zborovsky proposed to sell Midwest a total of 1,148 automobile transmissions. At the time of this proposal, Zborovsky informed Midwest that this large quantity of parts was not yet available, but indicated that he would inform Midwest when the units could be delivered.

1

In December 2001, Zborovsky contacted Ray Schoenfelder, the principal of Midwest, and informed him that the automobile transmissions were available. On December 10, 2001, Midwest agreed to purchase 887 units from AAA Wholesale at a total cost of approximately $420,000.00. The total purchase price was remitted by Midwest to AAA Wholesale via two separate wire transfers. The first occurred on December 18, 2001, and the second on January 2, 2002.

After receiving the full purchase price, AAA Wholesale did not immediately arrange the pick up of the units. Schoenfelder contacted Zborovsky repeatedly during the months of January and February to find out where Midwest could obtain the units. Zborovsky advised Schoenfelder that an audit was delaying the release of the units. In March 2002, Zborovsky instructed Midwest to pick up the units from Americore, a separate automobile parts distributor, in Cleveland, Ohio. Midwest arranged for the pick up of the units only to discover that they were automatic transmissions, not the manual transmissions Midwest believed it had purchased. After receiving a complaint from Schoenfelder about the discrepancy, Zborovsky indicated that he believed that the units Americore was delivering to Midwest were manual transmissions. Zborovsky then made attempts to find substitute parts that could be used to replace the parts that Midwest ordered.

On June 4, 2003, Midwest initiated this suit against AAA Wholesale and Zborovsky. Zborovsky seeks summary judgment on Midwest's fraud claims against him as an individual.[1]

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[1] The Court dismissed Midwest's breach of contract claim against Zborovsky on the record.

2

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under Minnesota law, the required elements of a fraud action are: (1) a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance. *See Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986). Zborovsky argues that Midwest has failed to provide factual support sufficient to prove the elements of its fraud claim. Specifically, Zborovsky claims that Midwest has not established the element of scienter.

Midwest responds that is has proffered enough evidence to create a genuine issue of fact suitable for trial. In support of its fraud claim, Midwest points to the affidavit of Schoenfelder, who testified that on or about December 10, 2001, Zborovsky contacted him and advised that the transmissions were ready and that Midwest should remit payment. Additionally, Midwest notes

that although Midwest wired the full purchase price to AAA Wholesale in two installments on December 18, 2001, and January 2, 2002, Zborovsky did not make the transmissions available for pick up until March 2002. In response to Schoenfelder's inquiries in the interim, Zborovsky told Midwest that the transmissions were being held up by an audit and could not be released. Finally, after the initiation of this suit, Zborovsky represented that AAA Wholesale was acting only as a broker between Midwest and Americore in this transaction. The allegation that AAA Wholesale was acting as broker has been refuted in the affidavits of Schoenfelder and Mark Gusley, the principal of Americore.

Midwest argues that Zborovsky's representations that the parts were ready in early December 2001, along with his failure to timely provide the parts, his excuses for the delay, and his subsequent representation that AAA Wholesale acted only as a broker to the transaction, create an inference that Zborovsky had no reason to believe that the transmissions were available when he represented that fact to Schoenfelder. For purposes of defeating a motion for summary judgment, the nonmoving party may draw upon favorable inferences from circumstantial evidence. *Do v. Wal-Mart Stores*, 162, F.3d 1010, 1013 (8th Cir. 1998) (citations omitted). Viewing the record in the light most favorable to Midwest, a reasonable fact finder could determine that Zborovsky knew that the transmissions were not ready at the time he told Midwest that they were available.

Zborovsky next argues that he is entitled to summary judgment on Midwest's fraud claim because Midwest seeks damages for economic loss. The economic loss doctrine provides that economic losses arising out of commercial transactions are not recoverable under certain theories of tort. *See Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159, 160-62 (Minn. 1981); *see also Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn. 1990). Instead, plaintiffs in such cases are

4

limited to their contract and warranty remedies under the U.C.C. The doctrine exists to preserve the distinction between tort and contract law, and it limits a party's claim for economic loss to contractual remedies.

Acting in response to *Hapka*, which narrowed a *Superwood* exception to the doctrine, the Minnesota Legislature made the doctrine in part statutory. *See AKA Distr. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998) (applying Minnesota law). Minnesota's economic loss doctrine is codified at Minn. Stat. §§ 604.10 – .101 (2004). Section 604.10 provides:

> (a) Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.
>
> (b) Economic loss that arises from a sale of goods, between merchants, that is not due to damage to tangible property other than the goods sold may not be recovered in tort.
>
> (c) The economic loss recoverable in tort under this section does not include economic loss due to damage to the goods themselves.
>
> (d) The economic loss recoverable in tort under this section does not include economic loss incurred by a manufacturer of goods arising from damage to the manufactured goods and caused by a component of the goods.
>
> (e) This section shall not be interpreted to bar tort causes of action based upon fraud or fraudulent or intentional misrepresentation or limit remedies for those actions.

Zborovsky argues that the economic loss claims by Midwest constitute "damage to the goods themselves" and are therefore not recoverable under section 604.10(c). Additionally, Zborovsky argues that Midwest's claims should be barred under section 604.10(a) because both parties are "merchants in goods of the kind" and the claimed economic loss arises from the sale of goods between the parties. The Court concludes that these arguments lack merit. First, Zborovsky has not provided any authority for the proposition that a complete failure to deliver

5

the promised goods constitutes "damage to the goods themselves." Moreover, section 604.10(e) is not limited to claims of fraud that would otherwise be viable under sections 604.10(a) and (c).

Zborovsky also argues that section 604.101 does not authorize a fraud claim against Zborovsky because he was not a "seller" under the statute. That section defines a seller as "a person who sells or leases or contracts to sell or lease the goods that are alleged to be defective or the subject of a misrepresentation." Minn. Stat. § 604.101, subd. 1(f). According to Zborovsky, he should not be considered a "seller" because he was not a party to the contract and because AAA Wholesale was the "seller." Given that scenario, however, Zborovsky could claim no rights or protections under the contract or the U.C.C. As such, Zborovsky could still be held liable for his alleged fraudulent misrepresentations collateral to the contract, which induced Midwest to execute the contract. *See AKA Distrib.*, 137 F.3d at 1086 ("A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement.").

Finally, Zborovsky argues that even if he can be considered a "seller" under the statute, Midwest's fraud claim is barred by section 604.101, which provides that "[a] buyer may not bring a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly." Minn. Stat. § 604.101, subd. 4. Zborovsky contends that he neither intentionally nor recklessly made any misrepresentations. Viewing the evidence in the light most favorable to Midwest, a reasonable fact finder could determine that Zborovsky either intentionally or recklessly misrepresented the fact that the transmissions were ready when in fact he knew that they were not yet available. Accordingly, the Court denies Zborovsky's motion for summary judgment.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Zborovsky's Motion for Summary Judgment [Doc. No. 34] is DENIED.

Dated: September 27, 2006

                                                    s/ Joan N. Ericksen  
                                                    JOAN N. ERICKSEN  
                                                    United States District Judge